IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHAD SISCO,

    Plaintiff,

    v.

MORTON BUILDINGS, INC.,

    Defendant.

Case No. 2:19-cv-02787-HLT

**MEMORANDUM AND ORDER**

Plaintiff Chad Sisco brings claims for disability discrimination and retaliation under the Americans with Disabilities Act Amendments Act ("ADAAA") against Defendant Morton Buildings, Inc. Docs. 1, 71. Defendant moves for summary judgment. Doc. 75. Because Plaintiff failed to exhaust his unlawful medical examination claim and otherwise fails to set forth a prima facie case for his other claims, the Court grants Defendant's motion for summary judgment.

**I.    BACKGROUND**[1]

Plaintiff began working at Defendant's plant in Winfield, Kansas, as a temporary worker in November 2016. Doc. 71 at 2. Plaintiff's hours varied based on the week, and he did various jobs at the plant. DSOF 5-6. Plaintiff started out building trusses for roofs using a nail gun, and then he moved out to the yard where he helped move lumber. DSOF 6. Plaintiff occasionally

---

[1] The Court discusses only the facts that are uncontroverted and necessary to resolve the motion. Plaintiff's counsel is admonished for making this process much more cumbersome than necessary by repeatedly making baseless objections, misrepresenting the record, and ignoring the parties' stipulations. For example, Plaintiff objected to Defendant's Statement of Facts ("DSOF") 98 as "unsupported, not based on personal knowledge and . . . hearsay." Doc. 85 at DSOF 98. But the facts were supported, the witness testimony was appropriate, and the parties had already stipulated to the validity of the relevant business records with only relevance objections reserved. Furthermore, Plaintiff tried to controvert the fact that Occu-Med called him on March 17 by citing deposition testimony where he stated Occu-Med did not call him <u>after</u> March 17. *See id.* (citing Doc. 85-2 at 229:19-230:4). Thus, to the extent Plaintiff objected to any facts contained in the Background section, those objections are not supported by the record and the facts are not genuinely disputed.

operated a forklift. DSOF 7. In February 2017, Defendant offered Plaintiff a full-time job conditioned on him successfully completing a medical screening by Occu-Med. Doc. 71 at 3. Occu-Med contracted with Defendant to provide medical screenings. *Id.* Occu-Med evaluated Plaintiff based on a written job profile dated January 2005. *Id.*

After a physical examination and completion of a medical questionnaire, Occu-Med asked Plaintiff to obtain additional information from his health-care providers. *Id.* Occu-Med needed additional information because Plaintiff disclosed that he had recently started taking Latuda for mild depression. Doc. 76-20 at 4; Doc. 71 at 4. Plaintiff did not disclose on his medical history questionnaire that he was taking Latuda, a prescription psychotropic medication, for schizophrenia. *See* Doc. 76-20 at 4; Doc. 71 at 2, 4; DSOF 14.[2] Moreover, shortly after the conditional job offer was made, Plaintiff's prescription was doubled, and he began taking a higher dosage. *See* Doc. 71 at 2-3. Latuda has many recognized side effects, including dizziness, light-headedness, nausea, metabolic changes, akathisia (restlessness of the muscles), and tardive dyskinesia (involuntary movement of the eyes, mouth, hands, arms, feet, and legs). DSOF 23.

Consequently, on February 27, 2017, Occu-Med asked Plaintiff to provide additional information from his health care providers regarding whether he could safely perform the duties of the new job with or without restriction or accommodation. DSOF 57.[3] On March 2, Four County Mental Health Center faxed a letter from the physician assistant who had prescribed Latuda to

---

[2] Plaintiff did, however, at some point tell Winfield Medical Arts (the provider Occu-Med used to complete Plaintiff's medical evaluation) about his schizophrenia. *See* Doc. 90 at DSOF 64.

[3] Plaintiff's counsel objects "to the extent the document speaks for itself." Doc. 85 at DSOF 57. The Court overrules this objection. The uncontroverted fact is supported by the record. Plaintiff attempts to controvert the fact that Occu-Med was asking about the new job by arguing that Occu-Med was asking about the wrong job. *See id.* Namely, Occu-Med asked whether Plaintiff could perform construction crew duties rather than plant laborer duties. *See id.* But Plaintiff does not controvert the fact that Defendant asked Occu-Med to use the same 2005 construction crew job profile to evaluate applicants for all its physically demanding jobs. *See id.* at DSOF 45. Nor does Plaintiff present any facts to show that the physical demands of the plant laborer position were so different from that of the construction crew position that using the 2005 job profile was inappropriate. *Id.*

2

Plaintiff. DSOF 62; Doc. 85-2 at 86:14-88:18; Doc. 76-22.[4] The letter stated that Plaintiff "seems to be doing fine . . . . As far as this provider knows, there are no side effects to the medications that [Plaintiff] is experiencing currently." DSOF 62; Doc. 76-22 at 2.

Occu-Med deemed this letter unresponsive, so it sent a follow-up email on March 3 asking Plaintiff to provide additional information from his health-care providers regarding his medication and whether he could safely perform the duties of his new job. DSOF 63, 65. A letter attached to the email requested the following:

> [a] report from current evaluation by treating psychiatrist and statement from the specialist addressing:
>
> a) current status of the applicant's mental health conditions and whether the conditions involve functional limitations, symptomatology, or mental impairments that would inhibit the safe, appropriate, and consistent performance of the Construction Crew essential job functions (attached). If work restrictions or accommodations are indicated please detail them as clearly as possible along with the duration of time they are best estimated to be necessary;
>
> b) whether the applicant's performance of the Construction Crew essential job functions places him at a significantly increased risk of substantial injury, or aggravation or exacerbation of his mental health conditions (if yes, please identify the specific environmental factors or job functions that present such a risk and any measures that could be taken to mitigate or eliminate the risk);
>
> c) whether the applicant's performance of the essential functions of this job would place his coworkers at a substantially increased risk of injury or harm (if yes, please identify any specific measures that could be taken to mitigate or eliminate the risk);
>
> d) whether prescribed medication produces any adverse side effects that would be relevant to the safe performance of the Construction Crew job functions (if yes, please identify the specific side effects and any mitigating restrictions);

---

[4]  Plaintiff's counsel objects "to the extent the document speaks for itself." Doc. 85 at DSOF 62. The Court overrules this objection. The uncontroverted fact is supported by the record.

3

> e) any other restrictions or accommodations recommended (not already identified in response to A-D) to permit the safe, appropriate, and consistent performance of essential job tasks (attached).

DSOF 66.[5] Plaintiff requested more time to get the necessary documentation, which Defendant granted. Doc. 76-26 at 3; Doc. 71 at 4. On March 7, Four County Mental Health Center faxed another letter from Plaintiff's physician assistant. DSOF 70. The letter stated the following:

> [Plaintiff] is currently under my care at Four County Mental Health Center in Winfield, KS. We are currently treating him for mood instability, auditory hallucinations, paranoid depression, anger, and history of suicidal ideation. Current diagnosis that we have is Other Specified Schizophrenia Spectrum and Other Psychotic Disorder and Unspecified Depressive Disorder. After recent medication change, he seems to be doing well. He is stable. His target symptoms seem to be in remission at this point in time per patient report as well as reports from the therapist. As far as we know, he is not having any side effects to medication and is tolerating medications well.

Doc. 76-25 at 1; Doc. 71 at 4. Occu-Med concluded that this letter was also non-responsive to its questions. DSOF 71.

On March 8, Occu-Med called Plaintiff to explain that the physician assistant's recent letter did not address Plaintiff's ability to safely perform essential job functions. DSOF 72. Plaintiff requested a second deadline extension to get proper documentation, which Defendant approved. *See id.*; *see also* Doc. 76-26 at 3-4; Doc. 71 at 4. Accordingly, on March 14, Occu-Med again provided Plaintiff with questions for his healthcare provider:

> "1) How long has Mr. Sisco's mental health conditions been stable on his current treatment regimen?" and "2) What period of time should Mr. Sisco's mental health conditions remain stable before he is permitted to begin working as a Construction Crew member (which includes working at heights, with heavy equipment, power tools, etc.)?"

---

[5] Plaintiff's counsel objects "to the extent the document speaks for itself." Doc. 85 at DSOF 66. The Court overrules this objection. The parties have stipulated to the source document's authenticity. Doc. 71 at 4. The letter's contents are uncontroverted and supported by the record.

Doc. 71 at 3. Plaintiff requested two additional time extensions, which Defendant granted. Doc. 76-26 at 4-5; Doc. 71 at 4. On March 17, Plaintiff met with his physician assistant, and she wrote on a prescription paper that "Chad's target symptoms are stable. He feels ready to work at this time." DSOF 90-91. Occu-Med reviewed the note and concluded that it was not responsive. DSOF 92. So that same day Occu-Med emailed Plaintiff that it still needed the previously requested information and that he had until March 20 to submit the information. DSOF 97. Occu-Med emailed Plaintiff a reminder on March 20. DSOF 102. Plaintiff did not provide any additional information to Occu-Med. DSOF 100.

Consequently, on March 21, Occu-Med reported to Defendant's recruiting supervisor that Plaintiff had not submitted required additional information and that Plaintiff's deadline for submitting that additional information had passed. Doc. 71 at 3-4. Recruiting Supervisor Christopher Sondgeroth worked at Defendant's headquarters in Morton, Illinois, and he did not talk with anyone at the Winfield, Kansas, plant about Plaintiff. DSOF 109-10, 137.[6] Sondgeroth told Occu-Med to suspend its screening, and Defendant revoked Plaintiff's conditional employment offer. Doc. 71 at 4.

Plaintiff later filed a charge via his attorney with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against protected activity. Doc. 90 at DSOF 152-53.[7] This lawsuit followed. DSOF 156-57.

---

[6] To the extent Plaintiff objects to these facts based on Sondgeroth's affidavit not being based on personal knowledge, the Court overrules the objection. Sondgeroth's affidavit is certainly based on personal knowledge with regards to his job and to whom he spoke. *See* Fed. R. Civ. P. 56(c)(4). Rule 56 does not impose a "magic words" requirement of "I have personal knowledge" to establish personal knowledge.

[7] Plaintiff's counsel objects "to the extent that the document speaks for itself." Doc. 85 at DSOF 153. The Court overrules this objection. The uncontroverted fact is supported by the record.

5

## II. STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. ANALYSIS

Plaintiff asserts three claims against Defendant: (1) terminating his employment due to his disability; (2) subjecting him to an unlawful medical examination; and (3) retaliating against him by terminating his employment after he complained about the unlawful medical examination process. Doc. 71 at 15. The Court turns to the unlawful medical examination claim first because Defendant raises a failure to exhaust administrative remedies affirmative defense.

### A. Unlawful Medical Examination

Plaintiff claims Defendant violated the ADAAA by subjecting Plaintiff to an unlawful medical examination. Doc. 71 at 15. Defendant argues that Plaintiff failed to exhaust his administrative remedies because he did not make this claim before the EEOC. *Id.* at 19-20.

The ADAAA prohibits improper medical examinations. 42 U.S.C. § 12112(d). Failure to file an EEOC charge for a discrete employment incident, however, permits the employer to raise

6

a failure-to-exhaust affirmative defense. *Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1185 (10th Cir. 2018). Thus, the threshold questions for the Court on this issue are (1) whether Plaintiff exhausted his claim for an improper medical examination before the EEOC, and (2) whether Defendant properly raised that defense.

Plaintiff asserts he exhausted administrative remedies because he checked the box marked "Disability" on his EEOC charge, the text and exhibits for his charge discussed the medical evaluation process in depth, and his charge alleged unlawful disability discrimination. *See* Doc. 85 at 93-94. Plaintiff also mentions that Defendant's response to his charge detailed the medical-evaluation process. *Id.* at 94. Plaintiff further relies on *Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, 460 F. Supp. 3d 1167 (D. Kan. 2020), which held that a claim for disability discrimination under 42 U.S.C. § 12101 et seq. preserved a claim for improper medical inquiries. Defendant argues, however, that Plaintiff's EEOC charge never mentioned any unlawfulness or impropriety regarding the medical evaluation itself. Doc. 76 at 48. Thus, the EEOC was not given an opportunity to conduct an administrative investigation as to whether an unlawful medical examination occurred. *Id.*

The exhaustion rule has two purposes: (1) to give notice to the charged party, and (2) to give the EEOC an opportunity to investigate the claims so that it can encourage settlement and voluntary compliance with federal law. *See Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). Therefore, a plaintiff's claims under this rule are generally limited "by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.* (citation omitted). Each discrete incident of alleged discrimination or retaliation must be exhausted. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). Furthermore, the reasonable-investigation inquiry is limited to what one would expect

from the discriminatory <u>acts</u> alleged in the administrative charge. *Id.* ("We emphasize, however, that our inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge.").

Here, Plaintiff, who was represented by counsel at the time, specifically charged Defendant with the following:

> 1. Terminating me due to my disability, my record of a disability, or by being regarded as disabled;
> 2. Refusing to allow me to continue my employment when I was able to perform the essential functions of the job;
> 3. Refusing to allow me to continue my employment when I was qualified and available;
> 4. For allowing its employees to discriminate and retaliate against me;
> 5. Refusing to take any action to prevent its employees from further discrimination and retaliation and from creating a hostile work environment;
> 6. For failing to interactively discuss if I needed a reasonable accommodation;
> 7. For failing to interactively discuss if I [sic] any reasonable accommodations were available;
> 8. For terminating my employment; and,
> 9. For opposing my request for unemployment benefits
> . . . .
> I further believe that [Defendant] created a hostile work environment to discriminate and to retaliate against me.
>
> . . . I further believe that [Defendant has] engaged in a pattern or practice of discrimination and retaliation against individuals similarly situated to myself.

Doc. 1-1 at 5. Plaintiff did not charge Defendant with an illegal medical examination. The other allegations in the EEOC charge fare no better. Plaintiff alleges he would have been hired full-time "upon passing a drug test." *Id.* at 3. He further alleges that when he took a drug test, he told the testing facility that he took Latuda. *Id.* He then describes the back and forth between Four County Mental Health Center and Occu-Med previously outlined. *Id.* at 3-4. Thus, while the medical-evaluation process was discussed before the EEOC, there are <u>no facts</u> pointing to the medical

8

evaluation as a discrete discriminatory act. Defendant was never on notice that Plaintiff believed the medical evaluation was improper.[8] There are no facts from which the EEOC could investigate whether the medical evaluation was legal. Therefore, the purposes of administrative exhaustion were not served here.

This case is like *Gunnell v. Utah Valley State College*, 152 F.3d 1253 (10th Cir. 1998). There, in relevant part, the Tenth Circuit held that a supplement to an original charge was sufficient notice of a sexual-harassment charge. *Id.* at 1260. In so holding, however, it held that the original claim did not allege a sexual-harassment claim. *Id.* The plaintiff had not marked the box for sex discrimination, and her narrative failed to rebut the presumption that she had not alleged a sex-discrimination claim. *Id.* Rather, "[a] reasonable reader would [have understood] that her mention of sex discrimination was merely a prelude, an explanation leading up to the gist of her complaint of retaliation." *Id.*

Just so here. While Plaintiff did check the disability box on his charge, that is not sufficient to show he exhausted an improper medical-examination claim. He is still obligated to exhaust each discrete discriminatory action. Here, any mention of the medical-examination process in the charge was only "an explanation leading up to the gist" of his discrimination and retaliation complaints—he was not hired because he was disabled or regarded as being disabled. No reasonable jury could find Plaintiff's charge exhausted an unlawful medical examination claim.

Plaintiff's reliance on *Fisher* is misplaced. *Fisher* dealt with whether the plaintiff had waived her § 12112(d) claim by not asserting it in her complaint. *See* 460 F. Supp. 3d at 1189 n. 12. It did not deal with exhausting administrative remedies. *See id.* And regardless, *Fisher* is not

---

[8] Notably, Plaintiff's complaint in this case also never mentions an unlawful medical evaluation. *See* Doc. 1.

binding on this Court. Therefore, Plaintiff failed to exhaust his administrative remedies on his improper medical-examination claim.

Next, the Court must determine whether Defendant properly raised the exhaustion defense. Plaintiff argues that Defendant waived the defense because it failed to raise the defense in its answer. Doc. 85 at 94-95. This argument, however, ignores that the parties stipulated to Defendant including the exhaustion defense in the pretrial order. Doc 71 at 19-20. Plaintiff's complaint made no mention of the unlawful medical-examination claim. *See* Doc. 1. Defendant did not object to Plaintiff including the unlawful medical-examination claim in the pretrial order so long as Defendant could raise the exhaustion defense. Doc. 90-7. The Court will not disregard stipulations. *See Lincoln*, 900 F.3d at 1186. The Court also has "broad discretion" in enforcing stipulations. *Id.* at 1188. It declines to revisit the magistrate judge's decision to enforce the stipulation that Plaintiff's counsel freely entered. *See* Doc. 71 at 19-20. Thus, Defendant has properly raised the exhaustion defense, and the Court grants Defendant summary judgment on Plaintiff's unlawful medical-examination claim.[9]

### B.   Failure to Hire Due to Disability

Plaintiff claims Defendant violated the ADAAA by terminating his full-time employment offer because of his disability. *See* Doc. 71 at 15; Doc. 85 at 87-89. Defendant argues that Plaintiff has no direct evidence of disability discrimination and that he fails to set forth a prima facie case

---

[9] Alternatively, Defendant would be entitled to summary judgment on the merits. Even assuming that Plaintiff was an employee of Defendant, an employee who applies for a new job from the same employer is treated as an applicant for that job under EEOC Enforcement Guidance unless the individual was noncompetitively entitled to the new position (due to seniority or some other relevant metric). And an employer can generally require a medical examination after an employment offer but prior to the new job beginning, so long as all entering employees are subjected to such an examination. 42 U.S.C. § 12112(d)(3). It is undisputed that Plaintiff was not entitled to the full-time position, and it is also undisputed that Defendant conditions all employment offers on medical screening. *See* DSOF 32-33. Thus, the medical examination in this case was lawful.

under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Doc. 90 at 120; Doc. 76 at 33-34.

Plaintiff first responds that there is direct evidence of disability discrimination. Doc. 80 at 104. This argument is specious. Direct evidence proves discrimination without inference. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018). Plaintiff points to the aforementioned medical examination as direct evidence of discrimination because "Defendant had no legitimate, non-discriminatory reason to have [Plaintiff] medically evaluated, and therefore, it could not have had a legitimate non-discriminatory reason to terminate him." Doc. 85 at 80-81. Yet Plaintiff concedes that Defendant screened all job applicants whether they had worked as temporary employees or not. DSOF 33. Thus, Plaintiff has conceded that Defendant had a legitimate reason for performing a medical evaluation on Plaintiff—it was a blanket requirement for all full-time job applicants. Therefore, the withdrawal of Plaintiff's full-time job offer based on his failure to complete his paperwork during his medical screening is not direct evidence of discrimination because it requires reasoning by inference. Consequently, Plaintiff must prove discrimination via the burden-shifting standard in *McDonnell Douglas*. *Fassbender*, 890 F.3d at 884.[10]

Under *McDonnell Douglas*, a plaintiff must first demonstrate a prima facie case of discrimination. *See id.* The burden then shifts to the defendant to present a legitimate,

---

[10] Plaintiff's reliance on *EEOC v. M.G.H. Family Health Center*, 230 F. Supp. 3d 796 (W.D. Mich. 2017) is misplaced. Plaintiff relies on *M.G.H.* for the proposition that Defendant directly discriminated against Plaintiff using a third party. *See* Doc. 85 at 83-87. First, *M.G.H.*, is not binding on this Court. More importantly, however, *M.G.H.* stands for the idea that "MGH cannot escape liability by insulating itself from [a third party's] assessment because MGH adopted [the third party's] (inconclusive) recommendation as the sole basis for termination, and thus, MGH regarded [the plaintiff] as having an impairment." *M.G.H.*, 230 F. Supp. 3d at 808. Here, conversely, Occu-Med never gave an assessment because it deemed Plaintiff's responses to its inquiries unresponsive. Defendant did not adopt a third-party determination that Plaintiff had an impairment. Defendant adopted the determination that Plaintiff had not complied with the examination process. This determination is not direct evidence of discrimination.

nondiscriminatory reason for the adverse action. *Id.* The burden finally shifts back to the plaintiff to show that the nondiscriminatory reason is pretext. *Id.*

To set forth a prima facie case for discrimination in this case, Plaintiff must show "(1) he is disabled (or perceived as disabled) as defined by the [ADAAA], (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013). Defendant argues that, even if one assumes Plaintiff has proven the first two elements, Plaintiff has not met the third prong of the test.

Under the third element, a plaintiff must show that he was terminated or not hired under circumstances that give rise to an inference that the termination was based on disability. *Dewitt v. Sw. Bell Tel. Co.*, 41 F. Supp. 3d 1012, 1017 (D. Kan. 2014) (citing *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 544 (10th Cir. 2014)). This prong "requires some affirmative evidence that the disability was a determinative factor in [a defendant's] decision" *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 990 (10th Cir. 2021).

Here, Plaintiff has produced <u>no</u> evidence to show that Sondgeroth (Defendant's recruiting supervisor and the decisionmaker on whether to withdraw the conditional employment offer) knew Plaintiff was disabled or considered him disabled. Rather, Plaintiff asserts that he told his supervisor, Dan Salsman, while plant manager Jeremy Polk was present, that he had "mental health issues." *See* Doc. 85-2 at 62:9-65:25, 97:14-100:22. Plaintiff further asserts that Sondgeroth knew Occu-Med did medical evaluations and that the delays in completing the pre-employment screening were due to Plaintiff needing more information from his medical providers. Doc. 85 at DSOF 116 (citing 85-3 at 98:3-98:14). None of this, however, is evidence that Sondgeroth knew that Plaintiff was <u>disabled</u>. It is uncontroverted that Sondgeroth withdrew the conditional

employment offer because Defendant had already granted four extensions for Plaintiff to complete his paperwork, and he failed to meet his final deadline. Doc. 90 at ¶ 116.[11] No reasonable jury could infer from the presented facts that Sondgeroth <u>knew</u> that Plaintiff had schizophrenia or a disability. It is uncontroverted that Sondgeroth worked in Illinois and did not talk to anyone at the Winfield, Kansas, plant about Plaintiff. Thus, no reasonable jury could infer Sondgeroth failed to hire Plaintiff <u>because of</u> his schizophrenia or disability.

This case resembles *Edmonds-Radford v. Southwest Airlines*. There, the Tenth Circuit affirmed the district court's summary-judgment holding that Southwest Airlines had not discriminated against the plaintiff under the Americans with Disabilities Act ("ADA"). *Edmonds-Radford*, 17 F.4th at 981. As relevant here, the Tenth Circuit held that the plaintiff failed to establish that her disability was a determinative factor in her termination. *Id.* at 984. The plaintiff-employee in that case had a learning disability and had informed several other employees of that fact. *Id.* at 981-82. The plaintiff struggled at her job, and she was eventually terminated. *Id.* at 982. The decision to terminate was made by three managers who did not know that the plaintiff was disabled. *Id.* at 982-83. The plaintiff had not identified any evidence tending to show that she was terminated due to her disability. *Id.* at 990. Therefore, the plaintiff failed the third requirement in her prima facie case. *See id.* at 991.

The same logic applies here. Plaintiff has brought forward no facts to show that Sondgeroth, the decisionmaker in this case, knew Plaintiff was disabled. Plaintiff's protestations that he told co-workers in Kansas about his mental health issues is like the plaintiff in *Edmonds-Radford* telling her trainers and co-workers about her learning disability. It fails to establish that

---

[11] Plaintiff's counsel—again—spuriously objects to this fact based on "the document speaks for itself" and that Sondgeroth's affidavit lacks an "attestation of personal knowledge." Doc. 85 at ¶ 116. The Court overrules this objection—again—for the reasons discussed above.

the decisionmaker knew about the disability. Thus, Plaintiff's claim for disability discrimination based on Defendant's failure to hire him full time must fail.[12]

### C. Retaliation for Protected Activity

Finally, Plaintiff claims that Defendant retaliated against him in violation of the ADAAA by terminating his employment when he complained about the unlawful medical-examination process required by Defendant. Doc. 71 at 15-16. Under the *McDonnell Douglas* framework, a plaintiff bears the burden of making a prima facie retaliation case. *Edmonds-Radford*, 17 F.4th at 994. Plaintiff must prove (1) he engaged in protected activity, (2) he was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Id.* Defendant argues that Plaintiff did not engage in protected activity, and even if he had, there is no causal connection between any protected activity and Defendant terminating Plaintiff's employment offer. Doc. 90 at 142-43.

Plaintiff lacks candor when he argues that he complained about the <u>unlawful</u> medical examination process. In so arguing, Plaintiff merely points to his deposition testimony that he complained to his supervisor, Dan, that "Occu-Med just kept giving me the same questions over and over." *See* Doc. 85-2 at 232:4-14. But complaining about the screening process is not the same as complaining about its unlawfulness. Not every complaint to an alleged employer constitutes protected activity. To engage in protected activity, Plaintiff must show "that he reasonably believed" his rights under the ADAAA were being violated. *See Jones*, 502 F.3d at 1194. Plaintiff

---

[12] In the alternative, Plaintiff also fails to show that Defendant's legitimate, nondiscriminatory reason for terminating him (his failure to complete his pre-employment paperwork after getting four deadline extensions) was pretext. Plaintiff "can establish pretext by showing weaknesses, contradictions, or inconsistencies in [Defendant's] reason[] such that a reasonable jury could find [it] unworthy of belief." *Edmonds-Radford*, 17 F.4th at 991. Plaintiff presents <u>no</u> evidence that Defendant's reason for terminating his employment offer was weak or inconsistent. *See* Doc. 85 at 89-91 (outlining Plaintiff's pretext argument). Thus, no reasonable jury could find pretext, so Plaintiff's claim would also fail at the third step in the *McDonnell Douglas* framework. *Edmonds-Radford*, 17 F.4th at 991-92.

points to nothing in the record to evidence such a belief. Therefore, Plaintiff's claim fails because he did not engage in protected activity and no reasonable jury could find otherwise.

And even if Plaintiff's general complaints were protected activity, Plaintiff points to no evidence that Sondgeroth was ever aware of those complaints. That makes this case like *Jones v. U.P.S.* There, the Tenth Circuit affirmed summary judgment for the defendant on the plaintiff's retaliation claim under the ADA. *Jones*, 502 F.3d at 1193-95. Specifically, the Tenth Circuit held that there was no evidence that U.P.S. was aware that the plaintiff was engaging in protected activity when he told a labor manager "I can't just go home. I need to work a job." *Id.* at 1194-95. On appeal, the plaintiff argued that this statement was a request for an accommodation. *Id.* at 1194. But "[u]nless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee because of the protected conduct, as required by statute." *Id.* at 1195. Just so here. The decisionmaker was unaware of Plaintiff's complaints, and thus unable to retaliate against him on those grounds. Therefore, Plaintiff fails to meet the third element of his prima facie retaliation case, and no reasonable jury could find otherwise.[13]

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 75) is GRANTED. Judgment shall be entered in favor of Defendant.

IT IS SO ORDERED.

Dated: January 28, 2022            /s/  *Holly L. Teeter*
                                   HOLLY L. TEETER
                                   UNITED STATES DISTRICT JUDGE

---

[13] Like his discrimination claim, Plaintiff also offers no evidence that Defendant's stated reason is a pretext for retaliation. Plaintiff presents no evidence that Defendant's reason for terminating his employment offer was weak or inconsistent. Thus, no reasonable jury could find pretext, so Plaintiff's claim would also fail at the third step in the *McDonnell Douglas* framework.

15